UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>       Plaintiff, )<br>                         )<br>   v.                                )<br>                                  )<br>DANIEL LABUDA, )<br>       Defendant. ) | CAUSE NO.: 2:16-CR-137-JVB-JEM |

## OPINION AND ORDER

This matter is before the Court on a motion for compassionate release and for appointment of counsel [DE 74], filed by Defendant Daniel Labuda, *pro se*, on November 4, 2020. The Government responded on November 19, 2020. For the reasons below, the Court denies the motion.

### BACKGROUND

On September 21, 2016, a two-count Indictment was filed charging Defendant with receiving and possessing child pornography. Defendant was arrested and released on a $20,000 unsecured bond pending trial. On December 28, 2017, Defendant pled guilty to Count 1 of the Indictment (receipt of child pornography). On April 24, 2018, the Court dismissed Count 2 of the Indictment, and sentenced Defendant to a total of 60 months imprisonment and 5 years of supervised release. Defendant is currently confined at the Federal Correctional Facility in Elkton, Ohio (FCI-Elkton).

On November 4, 2020, Defendant filed the instant motion, asking to be released from prison is light of the COVID-19 pandemic and his high BMI and high cholesterol. Defendant also requested appointment of counsel for purposes of the motion. The Court referred the motion to the Federal Community Defenders Office to consider whether to file a supplemental brief in support

of Defendant's motion. The office declined to do so. The Government filed its response on November 19, 2020.

## ANALYSIS

### A.  Request for Counsel

The Criminal Justice Act (CJA), codified at 18 U.S.C. § 3006A, governs appointment of counsel in criminal cases. Under the CJA, "[a] person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c). The ability of a defendant to bring a motion for compassionate release under § 3582(c)(1)(A) is relatively new, but the Seventh Circuit Court of Appeals has previously determined that a motion under § 3582(c) is not an "ancillary matter" such that the CJA mandates appointed counsel. *See United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999) ("How a district judge elects to consider a § 3582(c) motion to reduce a sentence is largely a matter of discretion. The judge can appoint counsel for a movant, but need not do so."). Whether to appoint counsel is a matter for the Court's discretion.

In this case, the Court referred Defendant's case to the Federal Community Defender to consider filing a brief on Defendant's behalf, but the Federal Community Defender declined to file such a brief. *See* [DE 75, 76]. Under the circumstances, the Court exercises its discretion and finds that appointment of counsel is not warranted.

### B.  Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), the Court can grant a defendant's motion for compassionate release if the defendant complied with the administrative exhaustion requirement and the Court, having considered the factors found at 18 U.S.C. § 3553(a) as applicable, finds that

2

extraordinary and compelling reasons warrant compassionate release and that compassionate release is consistent with the United States Sentencing Commission's applicable policy statements.

1. Administrative Exhaustion

A defendant has complied with the administrative exhaustion requirement "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582 (c)(1)(A). Documents attached to Defendant's motion indicate that he made a request for compassionate release to the warden at FCI-Elkton on August 9, 2020. *See* [DE 74] at 10 (Motion Exhibit 1). The Government does not contest that Defendant made the request. Accordingly, the Court finds that Defendant has satisfied this requirement.

2. Extraordinary and Compelling Reasons

Congress tasked the Sentencing Commission with promulgating a policy statement on § 3582(c)(1)(A) and the definition of "extraordinary and compelling reasons." 28 U.S.C. § 994(t). The policy statement, found in the application notes to § 1B1.13 of the United States Sentencing Guidelines Manual, provides, as is relevant here, that a defendant's medical condition is an extraordinary and compelling reason when the defendant's serious physical or medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and the defendant is not expected to recover from the condition. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1.[1]

Defendant identifies high BMI and high cholesterol "that is affecting his circulation" for the Court to consider in deciding whether to grant Defendant compassionate release. The CDC has

---

[1] The policy statement does not reflect the First Step Act's change to § 3582(c)(1)(A), which now permits a defendant to bring a motion for compassionate release.

3

recognized that obesity, defined as a BMI over 30, increases the risk of severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited November 23, 2020).[2] Defendant does not provide any documentation of his conditions. In its response, the Government attaches a portion of Defendant's prison medical records, indicating that he was seen in March 2020 for "evaluation/management" of his high cholesterol. Resp. Ex. 1 [DE 77-1]. Defendant was prescribed medication, counseled as to exercise, and scheduled for a follow-up appointment six months later. *Id*. Even accepting Defendant's contention that he has a BMI over 30, there is nothing to indicate that he has suffered severe symptoms or required aggressive treatment for his conditions, or that they could not be managed at the facility. In short, Defendant has not shown his conditions are "extraordinary and compelling" reasons for release. *See, e.g., United States v. Jones, No. 2:18-CR-137*, 2020 WL 3969912, at *4 (N.D. Ind. July 14, 2020) (denying compassionate release despite inmate's diagnoses of diabetes, obesity, hypertension and high cholesterol); *United States v. Pena, No.* 2:15-CR-72-PPS, 2020 WL 3264113, at *3 (N.D. Ind. June 17, 2020) (denying compassionate release from FCI-Elkton where "prison medical records indicate that Pena is generally in good health and his ailments are well-controlled"); *see also United States v. Collins,* No. 14-CR-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) ("[T]he COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

Defendant argues that because he is incarcerated at FCI-Elkton, he faces an increased risk of contracting COVID-19. The Court does not take this concern lightly. Of the 1,466 inmates at FCI-Elkton, the BOP reports 3 active cases of COVID-19 among inmates, and 6 among staff, while 901 inmates and 54 staff members are listed as having "recovered." *See*

---

[2] High cholesterol, by itself, is not explicitly listed by the CDC as producing a higher risk for severe illness.

4

https://www.bop.gov/coronavirus/ (last visited November 23, 2020). Despite the BOP's efforts, FCI-Elkton has not been able to contain the virus. *See, e.g.*, *United States v. Freeman*, No. 1:16-CR-78-HAB, 2020 WL 5959711, at *3 (N.D. Ind. Oct. 8, 2020) ("[T]here is nothing about FCI Elkton's handling of the outbreak to date that leaves the Court with any confidence that it could handle a future flare up of COVID-19."); *see also Wilson v. Williams*, 961 F.3d 829, 833-835 (6th Cir. 2020) (discussing the outbreak at FCI-Elkton and the BOP's efforts to address it).

However, an outbreak within a prison does not justify compassionate release unless the inmate's medical conditions are sufficiently serious. *United States v. Buchanan*, No. 1:18-CR-21-HAB, 2020 WL 3790589, at *1 (N.D. Ind. July 7, 2020) (denying compassionate release from FCI-Elkton despite 360 active cases of COVID-19 among inmates); *United States v. Jackson*, No. 2:18-CR-86-PPS, 2020 WL 3396901, at *5 (N.D. Ind. June 19, 2020) ("[O]f course, the presence of COVID-19 at a prison, even in a rampant form like at FCI Elkton, does not by itself create extraordinary and compelling reasons. There must be more, tied to the specific inmate's medical risk profile."); *Pena,* 2020 WL 3264113 at *3 (denying compassionate release where "prison medical records indicate that Pena is generally in good health and his ailments are well-controlled" despite outbreak at FCI-Elkton).

Defendant points to other circumstances he hopes would warrant his release, such as his good behavior in prison and his desire to help care for his family. The Court also recognizes that Defendant has taken advantage of FCI-Elkton's prisoner re-entry programming, and that access to those programs has been limited due to the outbreak. While the Court acknowledges the steps Defendant has taken, these factors are generally not the kind that justify compassionate release. *See*, *e.g.*, *United States v. Milton*, No. 2:15-CR-172, 2020 WL 6268806, at *3 (N.D. Ind. Oct. 26,

2020) ("While Milton's good behavior and desire to better herself by taking classes is certainly commendable . . . it is not a basis for release.").

Under the circumstances, the Court cannot say that Defendant's medical conditions and the present COVID-19 pandemic provide an extraordinary and compelling reason to warrant compassionate release and must deny the motion. In so doing, however, the Court

> do[es] not mean to minimize the risks that COVID-19 poses in the federal prison system . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the Bureau of Prisons'] statutory role, and its extensive and professional efforts to curtail the virus's spread.

*United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief requested in the motion for compassionate release and for appointment of counsel [DE 74].

SO ORDERED on November 24, 2020.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
